IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELAINE SCATTERGOOD | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LEE BILLITER, et al. | : | NO. 05-CV-3073 |

**M E M O R A N D U M**

Ditter, J.                                                                                                                                                                                                 June 18, 2012

Pro se plaintiff Elaine Scattergood accuses the defendants[1] of violating her civil rights by harassment, intimidation, false arrest, and false imprisonment. The defendants have moved for summary judgment. I find that Plaintiff's claims are barred by the statute of limitations and qualified immunity and are otherwise unsupported by record evidence. For the reasons that follow, I will grant the defendants' motion for summary judgment and dismiss Plaintiff's complaint with prejudice.

**I.  FACTS**

Plaintiff separated her complaint into six separate "incidents" that form the bases of her claims against the defendants. These incidents involve plaintiff's relationship with Gerald McDonald ("Mr. McDonald"), to whom she was married and in the process of divorcing when he died on June 12, 2003.[2] At times during their marriage, she resided with Mr. McDonald at 1808

---

[1] The defendants who are named in Plaintiff's amended complaint are the Manheim Township Police, Chief of Police Paul Rager, and Manheim Police Officers Lee Billiter, Christopher Keenan, and Allen Leed. In addition, the following unidentified defendants remain: Unnamed Associate of Christopher Keenan, Unnamed Associate of Lee Billiter, John Doe and "Mary Doe, et al."

[2] Plaintiff could not recall Mr. McDonald's date of death. The police incident reports attached to the defendants' motion for summary judgment reflect that he was discovered deceased at his home on June 12, 2003. Plaintiff does not dispute the accuracy of the date in these reports.

Crooked Oak Drive. Plaintiff describes the relationship as physically abusive and noted that she had numerous interactions with the Manheim Township Police due to domestic disputes. *Pl. Tr.* at 57:7-13.

### A. December 1999 Incident (Am. Compl. "Incident IV")[3]

Plaintiff testified that she was aware that Officer Billiter reported to the Crooked Oak property on December 12 or 13, 1999 in response to plaintiff's report that Mr. McDonald had pulled a knife on her. *Pl. Tr.* at 183:22-184:7. She alleges that the police entered the house, requested that she file a complaint, told her she had to file a complaint, and then forced her to leave the house. *Am. Compl.* at ¶¶ 42-49. She testified that the police were wrong to have reported to the house, that they should not have asked her to leave, and that she was "intimidated by the police" in relation to being asked to file a complaint against Mr. McDonald. *Pl. Tr.* at 176:21-177:6; 179:3-9.

### B. July 8, 2000 Incident (Am. Compl. "Incident V")[4]

On or about July 8, 2000, Plaintiff called the Manheim police to report that Mr. McDonald had physically assaulted her.[5] Officer Billiter and a second officer reported to the Crooked Oak property. After Plaintiff informed the officers that Mr. McDonald would disable the home phone, they advised Plaintiff to get a cell phone and suggested that she leave the house.

---

[3] For clarity and ease of discussion, I recount Plaintiff's claims in chronological order.

[4] Plaintiff describes two separate domestic disputes under the heading "Incident V." The first incident, however, is not the subject of any claim. She pleaded that Gerald McDonald called the police to have her removed from his house, the police responded, and that the officers were "nice." *Am. Compl.* ¶ 58.

[5] The police incident report from July 8, 2000, matches these facts and plaintiff did not dispute the date of the incident in her testimony. *Pl. Tr.* at 166:20-24.

*Pl. Tr.* at 37:4-10; 164:5-10.  Plaintiff requested the officers get Mr. McDonald medical treatment for an injury to his leg.  Officer Billiter reportedly stated "he didn't feel like dealing with a drunk" and that Mr. McDonald would be fine.  The officers then left. *Pl.'s Statement of Disputed Facts* at 14.

The following day Mr. McDonald called the police and told them Plaintiff had injured his leg.  Officer Leed, whom plaintiff alleges is a close friend of Mr. McDonald's son, William McDonald, together with Officer Billiter and a third officer reported to the house in response to Mr. McDonald's call.  The police officers saw that Mr. McDonald had a wound on his leg.  Officer Billiter handcuffed Plaintiff and told her that she was under arrest for aggravated assault.  According to the Plaintiff, Officer Leed stated that plaintiff was a "witch" and a "leech."  She was taken to the police station and held on bail of $40,000.

Plaintiff also asserted that Officer Billiter threatened to have her bail increased, attempted to trip her by sticking his foot out, and threatened to arrest her for assault after standing behind her car when she was leaving the police station.  She also stated that Officer Keenan blocked her car at the police station.  Plaintiff alleges the defendants brought a false charge and acted improperly by jeering at her and harassing her with threats of increased bail.

**C. November 17, 2002 and Earlier Incidents (Am. Compl. "Incident III")**

Under the heading "Incident III," Plaintiff alleged that the Manheim Township police "would threaten [her] with arrest . . . and force [her] to leave the house." *Am. Compl.* ¶ 34.  She noted two specific interactions with the police.[6]  In the first incident, Officer Kennan "slammed

---

[6] Plaintiff testified that the first incident preceded the second and acknowledge the police incident reports reflect that the alleged exchange of money took place on November 17, 2002. *Pl. Tr.* at 154:5-19.

the phone down while [she] was waiting to speak with [her] lawyer and chased [her] out into the street." *Am. Compl.* ¶ 37.  In the second interaction, Plaintiff alleges that Officer Keenan forced her to leave Mr. McDonald's house and that she saw Mr. McDonald hand Officer Keenan money.  Plaintiff testified that the police harassed her by forcing her to leave her marital home without a coat or wallet, by laughing at her, and by telling her she could sleep in prison if she wanted.  *Pl. Tr.* at 179:19-180:12.

### D. June 15, 2003 Incident (Am. Compl. "Incident II")

Mr. McDonald was found dead in his home on June 12, 2003.  On June 15, 2003,[7] Plaintiff went to the Oak Drive property for Mr. McDonald's funeral and was asked to leave by Michael McDonald, son of Mr. McDonald.  Plaintiff was handed a letter signed by Michael McDonald that stated, "Pls [sic] accept this letter as my request as the owner of property at 1808 Crooked Oak Dr., that you not trespass upon the property until further written notice from me."  The letter is dated "December 15, 2003," but plaintiff testified that the letter was "written on or about June 13, 2003" and that she was presented with the letter on the day she visited the Crooked Oak property for Mr. McDonald's funeral.  *Pl.'s Statement of Disputed Facts* at 8.

Plaintiff stated that on the day she was handed the no-trespass letter, Officer Billiter and an unnamed officer threatened to arrest her and that Officer Billiter tried to trip her and to bar her from reaching her car.

### E. June 25, 2003 Incident (Am. Compl. "Incident I")

On June 25, 2003, Plaintiff went to the Crooked Oak property to check on "Howard the

---

[7] Plaintiff did not recall the specific date, but testified it was "a few days" after Mr. McDonald's death and on the date of his funeral.  The police incident report records the date as June 15, 2003, and plaintiff has not disputed the date of this report.

cat." She testified that she was in the yard, she did not see the cat, and she left the property. A short time later, she was approached by Officer Keenan and another officer at a nearby market, told she was under arrest, handcuffed, her car keys were taken, and she was put in a police car (although not transported anywhere). Plaintiff stated that she understood that a neighbor of the Crooked Oak property had seen her on the property and called Michael McDonald. The neighbor or Michael McDonald then contacted the Manheim police. *Pl. Tr.* at 121:14-22.

The police incident report states that she was "taken into custody for an outstanding warrant." She testified that she was told she was under arrest for trespass. *Pl. Tr.* at 121:7-10. However, she also testified that she had a hearing pending before a District Justice on a different matter. *Id.* at 124:20-24.

Plaintiff was released with a "Citation/Summons" for criminal trespass. The citation form provides two options for "Case instituted by:" on-view arrest or citation/summons. On-view arrest is checked and crossed out and citation/summons is checked.

Plaintiff testified she was "horribly embarrass[ed]" and suffered "grave consternation and distress" because these events took place outside a grocery store in front of neighbors and strangers. *Id.* at 123:18-19. In addition, she stated she had red marks on her wrists from the handcuffs which were on her wrists for approximately thirty minutes. The police report indicates that she complained the handcuffs were too tight and hurting her wrists, that she was told to sit in a way that avoided leaning on the handcuffs, that she was advised that arguing would lead to more time in handcuffs because the officer "couldn't talk and write at the same time," and that Officer Charles Melhorn showed plaintiff that "an entire finger could fit between [plaintiff's] wrist and the cuff on both the left and right wrist."

The charges for defiant trespass[8] were later withdrawn after Plaintiff spoke with Michael McDonald, threatened to sue him, and he declined to testify against her.  Pl. Tr. at 134:13-23.

**F.  Other Incidents Preceding June 12, 2003 ("Incident VI")**

Plaintiff asserts generally that there were "other incidents" at the Crooked Oak property involving the Manheim police.  However, she describes only a single instance in which Mr. McDonald was arrested at the property after she called the police to enforce a protection from abuse order when Mr. McDonald "broke into" the Crooked Oak home.  Because Mr. McDonald was involved in the incident, it must have occurred prior to his death on June 12, 2003.

**II. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if there is no genuine issue of material fact when viewing all of the evidence in the light most favorable to the plaintiff as the non-moving party. The same standards for summary judgment apply to a pro se litigant, "notwithstanding giving a pro se litigant every opportunity to functionally respond in some meaningful way to a summary judgment motion and the Court's liberal construction of [plaintiff's] submissions." *Williams v. Lane*, 2007 U.S. Dist. LEXIS 16938, *9-10 (E.D. Pa. Mar. 7, 2007).

The defendants, as the moving parties, bear the burden of proving there is no genuine issue of material fact in dispute.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Evidence that is "merely colorable" or "not significantly probative" will not support an issue for trial.  *Id.*  To establish a genuine issue of material fact, plaintiff thus must present more than "mere allegations, general denials, or . . . vague statements."

---

[8] 18 Pa. C.S.§ 3503(b)(1)(I).

6

*Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991).  Instead, she must either (1) cite to particular parts of materials in the record, including depositions, documents, affidavits or declarations, admissions, or other materials; or (2) show that the materials cited by the defendants do not establish the absence of a genuine dispute.  Fed. R. Civ. P. 56(c)(1).

## III.  DISCUSSION

### A.  Unnamed Defendants and Chief Paul Rager Are Dismissed

Plaintiff names as defendants unidentified associates of Officers Billiter and Keenan as well as "John and Mary Doe, et al."  "If reasonable discovery does not unveil the proper identities, however, the John Doe defendants must be dismissed."  *Blakeslee v. Clinton County*, 336 Fed. Appx. 248, 250 (3d Cir. Pa. 2009) (citing *Scheetz v. The Morning Call, Inc.*, 130 F.R.D. 34, 37 (E.D. Pa. 1990) ("Fictitious parties must eventually be dismissed, if discovery yields no identities.")).

Plaintiff filed this action on June 27, 2005, and has had over five years to conduct discovery.  Despite numerous extensions of the discovery deadline, she has not identified these anonymous defendants and has not attempted to amend her complaint to name the real parties in interest.  Summary judgment is therefore granted as to defendants John Doe, Mary Doe, "Unnamed Associate of Lee Billiter," and "Unnamed Associate of Christopher Keenan."

Summary judgment is also granted as to defendant Chief of Police Paul Rager.  Although Plaintiff names him in her complaint, she has not alleged or evidenced that he participated in violating her rights, directed others to violate those rights, or acknowledged or acquiesced to his subordinate's violation.

### B. The Two-Year Statute of Limitations Began to Run on June 25, 2003

In Pennsylvania, claims of false arrest and false imprisonment are governed by a two-year statute of limitations. *See* 42 Pa. Cons. Stat. § 5524(1*); Garvin v. City of Phila.*, 354 F.3d 215, 220 (3d Cir. 2003)(finding limitations period for § 1983 actions are governed by the state in which the cause of action accrued). A two-year statute of limitations also governs a § 1983 claim alleging a violation of substantive due process (Plaintiff's claims of intimidation and harassment). *Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998); *Stawairski v. Borough of Summit Hill*, 262 Fed. Appx. 420, 421 (3d Cir. 2008).

Plaintiff filed her complaint on Monday, June 27, 2005. Because she filed just after the weekend, the statute of limitations began to run, at the very latest, on June 25, 2003. Thus, Plaintiff must establish that each cause of action occurred sometime after June 25, 2003, or that claim will be barred by the statute of limitations.

### C. Plaintiff Cannot Establish Liability For False Arrest

"The statute of limitations for a claim of false arrest or false imprisonment begins to run 'at the time the claimant becomes detained pursuant to legal process.'" *Leblanc v. Stedman*, No. 11-4624, 2012 U.S. App. LEXIS 8965, *8 (3d Cir. May 2, 2012) (quoting *Wallace v. Kato*, 549 U.S. 384, 397 (2007)). The June 25, 2003 incident, "Incident I," in which Plaintiff was arrested by defendant Christopher Keenan and an "unknown officer,"[9] is the one incident that occurred within the two-year statute of limitations governing Plaintiff's claims.

---

[9] The police incident report reflects that Charles E. Melhorn was the "backup officer" but Plaintiff did not amend her complaint to name Officer Melhorn and I have dismissed her claims against unnamed defendants for the reasons set forth above. Even if Officer Melhorn had been a named defendant, Plaintiff could not establish a claim against him for the same reasons, set forth above, that apply to Officer Keenan.

To prove liability for false arrest or false imprisonment, plaintiff must show that the police lacked probable cause to arrest her on June 25, 2003, or despite a lack of probable cause, the officers are not entitled to qualified immunity. *See Leblanc v. Stedman,* 2012 U.S. App. LEXIS 8965, *9-10 (3d Cir. May 2, 2012).

### 1. Probable Cause to Arrest Plaintiff

An officer will have probable cause to arrest if "at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense" and the officer was authorized to arrest the suspect for that offense. *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005).

#### a. Arrest for Outstanding Warrant

The police incident report states that Plaintiff was "taken into custody for an outstanding warrant." Police Incident Report, June 25, 2003, ECF No. 138-8. Prior to handcuffing Plaintiff and placing in her in the back of a police car, the arresting officers were "advised that there was a warrant for the arrest of [Plaintiff]" and that the District Justice "would like to see her." Plaintiff did not contest the police incident report and conceded in her deposition testimony that she had a hearing pending before a District Justice on a separate matter at the time of her arrest. Indeed, in Plaintiff's brief opposing the defendants' motion to dismiss she stated that she would provide the jury "every police report concerning me." *Pl.'s Opp. Mot. Summ. J.* at 2.

Plaintiff testified, however, that she was arrested for trespass. Thus, although she did not contest the outstanding warrant for her arrest or the evidence that she was detained pursuant to that warrant, I will evaluate whether the arresting officers had probable cause to arrest her for

9

trespass.

### b. Arrest for Criminal Trespass

Under Pennsylvania law, a person commits criminal trespass when he, knowing he is not licensed or privileged to do so, enters or remains in any place as to which notice against trespass is given by actual communication. 18 Pa.C.S. § 3503(b)(1)(i). This is a summary offense unless "the offender defies an order to leave personally communicated to him by the owner of the premises or other authorized person," in which case it is a misdemeanor. *Id.* § 3503(b)(2).

Pennsylvania law authorizes a municipal police officer to execute an arrest without a warrant for "*[a]ny offense* which the officer views *or otherwise has probable cause* to believe was committed within his jurisdiction." 42 Pa. C.S.A. § 8952(1) (emphasis added). The Superior Court of Pennsylvania has interpreted § 8952 to:

> allow[] a municipal police officer to perform his duties with regard to *any* offense committed within his jurisdiction, be it a felony, misdemeanor or summary offense. This authority is not limited to offenses viewed by the officer but *includes those offenses which the officer has probable cause to believe were committed* within his jurisdiction. 42 Pa.C.S. § 8952(1). Were such not the case, the practical consequences would be that police officers often would be unable to issue citations for summary offenses otherwise established by the evidence at hand merely because they were called to the scene after the violations occurred. It is unquestionably the legislature's intent to establish a probable cause standard as a means of defining the bounds of police authority in *arresting* or citing an actor for a summary offense.

*Commonwealth v. Elliott*, 599 A.2d 1335, 1338 (Pa. Super. Ct. 1991) (emphasis added). The Pennsylvania Supreme Court has not interpreted this provision and a warrantless arrest for "even a very minor criminal offense" is not forbidden by the Fourth Amendment. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (finding an officer may make an arrest based on

probable cause for "even a very minor criminal offense" committed in his presence and declining to "speculate whether the Fourth Amendment entails an 'in the presence' requirement").

Thus, pursuant to *Elliott*, the Manheim Township police were authorized to arrest Plaintiff so long as they had reasonable cause to believe that she committed at least the summary offense of criminal trespass. Here, there is no question that such reasonable cause existed. Plaintiff concedes that she "stepped inside the side yard" of the Crooked Oak property on June 25, 2003. She also acknowledges that she entered the property *after* receiving the letter from Michael McDonald that stated that he was the owner of the property and instructed plaintiff not to trespass on the property.[10] Police reports dated June 15, 2003, reflect that Officers Thomas Miles and Lee Billiter witnessed Michael McDonald hand Plaintiff this no-trespass letter.

Although plaintiff argues that the ownership of the property was in question and that she thus could not have been trespassing, she has presented no evidence to support her claim of questionable ownership.[11] Regardless, the police had reasonable cause to believe that the plaintiff did not have permission to be on the property. Plaintiff and the police department were familiar with each other. Even Plaintiff noted that the department was called "too many times"

---

[10] The letter actually asked Plaintiff to "accept this letter as my *request* . . . that you not trespass upon the property." (Emphasis added). Whatever the wording may have been is not significant– both the police and the plaintiff treated the letter as a notice that satisfied the requirement of 18 Pa. C.S.§ 3503(b)(1).

[11] Plaintiff testified to her belief that the house was owned by Mr. McDonald during their marriage, that she was never on the deed to the property, that Mr. McDonald transferred his ownership to his son, Michael McDonald, shortly before his death, that Mr. McDonald did not leave Plaintiff any interest in the property in his will, and that despite contesting the estate she did not receive any interest in the Crooked Oak Property. Plaintiff testified that the transfer occurred prior to Mr. McDonald's death. At the time of Plaintiff's detention, she did not raise a challenge to the charge of trespass based on any alleged ownership interest in the property.

in the course of her living with Mr. McDonald because of domestic disputes, often involving arguments over Plaintiff's right to be on the property. *See e.g., Pl. Tr.* at 57:7-13; *Mot. Summ. J.* Ex. G, July 8, 2000 Police Incident Report (noting a civil order giving Gerald [McDonald] exclusive rights to the property and a trespass letter based upon that order); *id.* at Ex. F, November 17, 2002 Police Incident Report (stating that Plaintiff was ordered to leave the Crooked Oak property because Mr. McDonald "has a signed court order granting him sole custody" of that property); Officer Keenan November 17, 2002 email (noting Plaintiff was removed from the Crooked Oak property because "Mr. McDonald has a court order giving him sole ownership of the home and he produced a copy of the document"); *Id.*, Officer John Wettlauder Nov. 18, 2002 email (stating same); *id.* at 71:5-10 (noting Mr. McDonald often asked her to leave the house); *id.* at 101:9-14 (noting a Protection From Abuse order against Plaintiff).

Therefore, in light of the no-trespass letter handed to Plaintiff in the presence of Manheim police officers, previous court orders barring Plaintiff from the property which the Manheim police were called to enforce, and the report that Plaintiff was illegally trespassing on the Crooked Oak property, the officers had reasonable cause to believe that Plaintiff was on the property knowing she did not have the privilege to be there.

One will search long and hard in the annals of the law of trespass to find as trivial an offense as the one involved here where Plaintiff was seen in the yard of the property for just 13 seconds. That does not mean, however, that she did not trespass or that the officers did not have probable cause to arrest her. Probable cause requires only a "fair probability" that Plaintiff committed an offense and need exist as to *any* offense that *could* be charged under the circumstances, not necessarily what is charged or whether the person is later acquitted. *See*

12

*Wright*, 409 F.3d at 602.

### 2. Qualified Immunity to Arrest for a Summary Offense

Even if plaintiff could prove that she was arrested for trespass, and not because of an unrelated warrant for her arrest, and that the officers did not have probable cause to arrest her without a warrant for having committed a summary offense, they are immune from liability under the circumstances here.  Government officials are protected by qualified immunity when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997).  A police officer will be protected from a suit for damages based upon a claim that he lacked probable cause if "a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officer possessed." *Anderson v. Creighton*, 483 U.S.635, 641 (1987).  A law enforcement official who "reasonably but mistakenly conclude[s] that probable cause is present" is entitled to immunity. *Id.*

As noted above, the Pennsylvania Superior Court explicitly authorizes a municipal officer to make a warrantless arrest for a summary offense based on reasonable cause. *Elliott*, 599 A.2d at 1338.  In the absence of a Pennsylvania Supreme Court or United States Supreme Court ruling to the contrary, at best Plaintiff can establish only that the law is unclear on whether a municipal officer may make a warrantless arrest for a summary offense that he does not witness, but for which the officer has reasonable cause to believe a crime has been committed. *See e.g., Hughes v. Shestakov*, No. 00-6054, 2002 U.S. Dist. LEXIS 13817, *12-15 (E.D. Pa. July 24, 2002), *aff'd* 76 Fed. Appx. 450 (3d Cir. 2003).  The arresting officers are therefore entitled to immunity.

Plaintiff's claim must be dismissed because the arresting officers had probable cause and

alternatively are shielded from suit by qualified immunity.

### D.  Plaintiff Has Presented No Evidence of Excessive Force.

Plaintiff asserts a claim of excessive force in relation to her June 25, 2003 arrest.  She argues that she was "handcuffed purposely tight to hurt [her] wrists."  *Pl.'s Opp. Mot. Summ. J.* at 5.  Plaintiff concedes, however, that she simply had red marks on her wrists, she had no lacerations, and she was in handcuffs for approximately thirty minutes.  Furthermore, she did not dispute the police incident report that notes an entire finger could fit between her wrist and the handcuff on each arm.  Plaintiff has therefore failed to provide any evidence of excessive force.  *See e.g., Gilles v. Davis*, 427 F.3d 197, 208 (3d Cir. Pa. 2005) (finding "insufficient evidence as a matter of law for excessive force by handcuffing" where plaintiff's claim was based on his "complaint that the handcuffs were too tight").

### E.  Plaintiff's Substantive Due Process Claim Fails Because She Had No Property Interest and Defendants Conduct Did Not Shock The Conscience.

Plaintiff's assertion that she was harassed and intimidated by the Manheim Township police, read in the light most favorable to her as a pro se plaintiff, is understood to be a claim that the police violated her substantive due process rights.[12]  "To set forth a substantive due process claim under 42 U.S.C. § 1983, a plaintiff must assert a constitutionally protected liberty or property interest that has been interfered with by a defendant acting under the color of state law

---

[12] "The law is well-settled that mere threatening language does not constitute a constitutional violation." *Johnakin v. Andidora*, No. 1:CV-11-2393, 2012 U.S. Dist. LEXIS 65021, *20-22 (M.D. Pa. Feb. 3, 2012) (citing cases).  *See also,Balliet v. Whitmire*, 626 F. Supp. 219, 228-229 (M.D. Pa. 1986), *aff'd*, 800 F.2d 1130 (3d Cir. Pa. 1986) ("Verbal abuse is not a civil rights violation.").

. . .. The Third Circuit has held that a substantive due process claim grounded in an arbitrary exercise of governmental authority may be maintained only where the plaintiff has been deprived of a 'particular quality of property interest." *Kuhn Constr. Co. v. Diamond State Port Corp.*, 2011 U.S. Dist. LEXIS 44635, *20-21 (D. Del. Apr. 26, 2011).

Plaintiff did not identify any such interest.  To the extent that she basis her claim on the defendants' actions relating to her ability to occupy the Crooked Oak property, the claim fails because she has not produced any evidence that she owned the property.  *See e.g., DeBlasio v. Zoning Board of Adjustment*, 53 F.3d 592, 600 (3d Cir. 2003) (defining "ownership" as a property interest worthy protected by substantive due process) (abrogated on other grounds by *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003)).  To the contrary, as noted above, she testified that Mr. McDonald was the owner until he transferred ownership to his son, Michael McDonald, and that on at least one occasion she had been barred from coming within sixty feet of the property by a court order.  *See supra* note 9; Pl. Tr. at 86.

Furthermore, "civil liability for violation of substantive due process arises from 'only the most egregious official conduct.'" *MARJAC, LLC v. Trenk*, 380 Fed. Appx. 142, 147 (3d Cir. 2010)*(*quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).  "[E]xecutive action violates substantive due process only when it shocks the conscience." *UA Theatre Circuit v. Twp. of Warrington*, 316 F.3d 392, 399-400 (3d Cir. Pa. 2003)

Plaintiff's claim of harassment and intimidation is based on the comments of defendants Keenan, Billiter and Leed.  Even when considering the alleged remarks made outside the two-year statute of limitations, calling plaintiff a "gold digger," a "witch" and a "leech," and the

"jeering" comments of "let's see how you like being in jail," "hurting you makes my day," and "say another word and we'll put you in jail on a new charge," do not rise to the level of a constitutional violation that shocks the conscience under the circumstances here. *See e.g., Koorn v. Lacey Twp.*, 78 Fed. Appx. 199, 204 (3d Cir. 2003) (finding plaintiff failed to "allege any conduct so egregious that it 'shocks the conscience,'" and citing cases holding the same where "police officers' oral threats and repeated harassment (but not physically intrusive or violent conduct) that did not 'strike at the basic fabric' of a protected relationship, such as the parent-child relationship, was not sufficiently egregious as to 'shock the conscience;'" "allegation that sheriff laughed at and threatened to hang a prisoner did not state a constitutional claim under § 1983;" "[w]ithout even a suggestion of physical injury, [state prison librarian's] verbal abuse and racial epithets, although continuing for a long period of time, fall short of conscience shocking conduct").

### F. There is No Evidence To Support A Conspiracy Claim

Plaintiff also claims the defendants entered into a conspiracy to harm her "in the deprivation of freedom and dignity and home." Am. Compl. at 20.  I have interpreted Plaintiff's claim as one of conspiracy to interfere with her civil rights pursuant to 42 U.S.C. § 1985(3).

To establish a claim under 42 U.S.C. § 1985(3), a plaintiff must allege and produce evidence of: (1) an agreement to deprive plaintiff of a constitutional right (i.e., a conspiracy); (2) motivated by a *racial* animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United

States.  *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997).

"[A] plaintiff must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious."  *Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006).  Plaintiff has not alleged that she is a member of a protected class or established any class-based animus on the part of the defendants.  Furthermore, she has produced no evidence, regardless of any limitations period, that the defendants had the required "meeting of the minds" to plan an unlawful act or had any unlawful purpose.  In addition, under § 1985, "a conspiracy must involve more than one state or private agency."  *Carter v. Delaware State Univ.*, 65 Fed. Appx. 397, 400 (3d Cir. 2003).  Here, just as in *Carter*, the defendants are all members of the same agency, the Manheim Township Police.

Plaintiff's claim must be dismissed because she has failed to plead or to produce evidence of a civil conspiracy.

## IV.  CONCLUSION

Plaintiff has failed to produce evidence to support her claims of false arrest, false imprisonment, harassment, intimidation and conspiracy.  The defendants are therefore entitled to judgment as a matter of law.

An appropriate order follows.